UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| ROXIE LEE M., on behalf of the Estate of KELLY C. J.,[1]<br><br>                Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner, Social Security Administration,<br><br>                Defendant. | CIV. 17-5087-JLV<br><br>ORDER |

**INTRODUCTION**

Plaintiff Roxie Lee M., on behalf of the Estate of Kelly C. J., filed a complaint appealing the final decision of Nancy A Berryhill, the Acting Commissioner of the Social Security Administration, finding Kelly C. J. not disabled.[2] (Docket 1). The Commissioner denies plaintiff is entitled to benefits. (Docket 11). The court issued a briefing schedule requiring the

---

[1]The Administrative Office of the Judiciary suggested the court be more mindful of protecting from public access the private information in Social Security opinions and orders. For that reason, the Western Division of the District of South Dakota will use the first name and last initial of every non-governmental person, except physicians and other professionals, mentioned in the opinion. This includes the names of non-governmental parties appearing in case captions.

[2]The Appeals Council found Kelly C. J. disabled beginning June 1, 2008. (Docket 14 ¶ 14). Plaintiff does not challenge that decision. The issue before the court is whether Kelly C. J. was disabled during the period beginning August 14, 2005, through May 30, 2008. Id. ¶¶ 2, 17 & 18.

parties to file a joint statement of material facts ("JSMF").  (Docket 13).  The parties filed their JSMF.  (Docket 14).  For the reasons stated below, plaintiff's motion to reverse the decision of the Commissioner is denied and the defendant's motion to affirm the decision of the Commissioner is granted.

## FACTUAL AND PROCEDURAL HISTORY

The parties' JSMF (Docket 14) is incorporated by reference.  Further recitation of salient facts is incorporated in the discussion section of this order.  On August 27, 2008, Kelly C. J. ("claimant") applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") pursuant to Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33, 1381-83f (2006), respectively.  Id. ¶ 2.  Claimant alleged an onset of disability date of August 14, 2005.  Id.

On February 3, 2011, the Appeals Council found claimant disabled "beginning June 1, 2008."  Id. ¶ 17.  Plaintiff does not challenge that decision.  The Appeals Council found claimant not disabled for the period "prior to June 1, 2008."  Id. ¶ 18.  Claimant appealed that decision to this court.  On September 25, 2012, the court reversed the agency's final decision.  Id. ¶ 19; see also Jones v. Astrue, No. CIV. 11-5014, 2012 WL 4443957 (D.S.D. Sept. 25, 2012).[3]  Claimant died on June 7, 2013.  (Docket 14 ¶ 26).  On June 7,

---

[3]The parties included the material portions of the order in the joint statement of material facts.  See Docket 14 ¶¶ 19-23.  The court will refer to Docket 14 when referencing the earlier order, unless otherwise noted.

2013, Roxie Lee M. was substituted as plaintiff on behalf of claimant's estate. Id. ¶ 28.

On February 7, 2017, an administrative law judge ("ALJ") issued a decision finding claimant was not disabled. Id. ¶ 39; see also Administrative Record at pp. 565-76 (hereinafter "AR at p. ___"). The Appeals Council denied plaintiff's request for review and affirmed the ALJ's decision. (Docket 14 ¶ 41). The ALJ's decision constitutes the final decision of the Commissioner of the Social Security Administration. It is from this decision which plaintiff timely appeals.

The issue before the court is whether the ALJ's decision of February 7, 2017, that claimant "was not under a disability within the meaning of the Social Security Act from August 14, 2005, through June 1, 2008" is supported by substantial evidence in the record as a whole. (AR at p. 575) (bold omitted); see also Howard v. Massanari, 255 F.3d 577, 580 (8th Cir. 2001) ("By statute, the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.") (internal quotation marks and brackets omitted) (citing 42 U.S.C. § 405(g)).

## STANDARD OF REVIEW

The Commissioner's findings must be upheld if they are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006); Howard, 255 F.3d at 580. The

court reviews the Commissioner's decision to determine if an error of law was committed. Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Cox v. Barnhart, 471 F.3d 902, 906 (8th Cir. 2006) (internal citation and quotation marks omitted).

The review of a decision to deny benefits is "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . [the court must also] take into account whatever in the record fairly detracts from that decision." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001)).

It is not the role of the court to re-weigh the evidence and, even if this court would decide the case differently, it cannot reverse the Commissioner's decision if that decision is supported by good reason and is based on substantial evidence. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005). A reviewing court may not reverse the Commissioner's decision " 'merely because substantial evidence would have supported an opposite decision.' " Reed, 399 F.3d at 920 (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995)). Issues of law are reviewed *de novo* with deference given to the Commissioner's construction of the Social Security Act. See Smith, 982 F.2d at 311.

The Social Security Administration established a five-step sequential evaluation process for determining whether an individual is disabled and entitled to DIB under Title II or SSI benefits under Title XVI. 20 CFR §§ 404.1520(a) and 416.920(a).[4] If the ALJ determines a claimant is not disabled at any step of the process, the evaluation does not proceed to the next step as the claimant is not disabled. Id. The five-step sequential evaluation process is:

> (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment—one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity to perform . . . past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove there are other jobs in the national economy the claimant can perform.

Baker v. Apfel, 159 F.3d 1140, 1143-44 (8th Cir. 1998). The ALJ applied the five-step sequential evaluation required by the Social Security Administration regulations. (AR at pp. 569-75).

---

[4] The criteria under 20 CFR § 416.920 are the same under 20 CFR § 404.1520. Boyd v. Sullivan, 960 F.2d 733, 735 (8th Cir. 1992). All further references will be to the regulations governing DIB, unless otherwise specifically indicated.

**STEP ONE**

At step one, the ALJ determined claimant "had not [been] engaged in substantial gainful activity since August 14, 2005, the alleged onset date." (AR at p. 569). Plaintiff does not challenge this filing. (Dockets 18 & 21).

**STEP TWO**

At step two, the ALJ must decide whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. 20 CFR § 404.1520(c). A medically determinable impairment can only be established by an acceptable medical source. 20 CFR § 404.1513(a). Accepted medical sources include, among others, licensed physicians. Id. "It is the claimant's burden to establish that [his] impairment or combination of impairments are severe." Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007).

The regulations describe "severe impairment" in the negative. "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 CFR § 404.1521(a). An impairment is not severe, however, if it "amounts to only a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." Kirby, 500 F.3d at 707. Thus, a severe impairment is one which significantly limits a claimant's physical or mental ability to do basic work activities. The ALJ identified plaintiff suffered from the following severe impairments: "interstitial lung

6

disease, diastolic dysfunction of the left ventricle, tachycardia, and chronic obstructive pulmonary disease."   (AR at p. 569).

Plaintiff challenges this finding asserting the ALJ improperly rejected a "treating physician's retrospective opinion" that claimant suffered "scleroderma[5] causing interstitial lung disease[6] and pulmonary emboli" and because of that severe impairment claimant "was unable to sustain full-time sedentary employment" from September 14, 2005.   (Docket 18 at p. 17). Plaintiff argues the ALJ should have adopted the medical opinion of Dr. Stephen Calhoon[7] that claimant "had scleroderma in October 2005, although his severe disease went undiagnosed for several years after that."   Id. at p. 18 (citing Docket 14 ¶ 115).   Plaintiff contends the ALJ's "rejection of the diagnosis of scleroderma at step two . . . resulted in excluding scleroderma

---

[5]"Scleroderma is a disabling disease characterized by fibrosis, an excessive production of connective tissue proteins, such as collagen[.]" (Docket 14 at p. 64) (bold omitted).

[6]"Interstitial lung disease describes a large group of disorders, most of which cause progressive scarring of lung tissue.   The scarring associated with interstitial lung disease eventually affects your ability to breathe and get enough oxygen into your bloodstream. . . . Some types of autoimmune diseases . . . can cause interstitial lung disease. . . . . Once lung scarring occurs, it's generally irreversible.   Medications can slow the damage of interstitial lung disease. . . . Lung transplants are an option for some people who have interstitial lung disease."   (Docket 14 at p. 62) (bold omitted).

[7]"Dr. Stephen Calhoon is a board-certified internist . . . [whose] subspecialties are pulmonary disease and critical care."   (Docket 14 at p. 27 n.11).

7

from consideration at step three and subsequent steps of the sequential evaluation." Id. at p. 24.

Plaintiff argues the ALJ "failed—without explanation—to consider the two brothers' descriptions of symptoms and limitations . . . that informed Dr. Calhoon's opinion evidence." (Docket 18 at p. 21) (referencing Docket 14 ¶¶ 115 & 140-41). Plaintiff submits the ALJ "failed to properly apply . . . 20 CFR § 404.1527(c)(2), instructing how to assign evidentiary weight to the treating physician's opinion evidence." Id. In doing so, plaintiff argues the ALJ improperly drew inferences from the medical records. Id. at p. 22 (referencing Shontos v. Barnhart, 328 F.3d 418, 427 (8th Cir. 2003), citing Lund v. Weinberger, 520 F.2d 782, 785 (8th Cir.1975)).

Plaintiff argues the ALJ improperly relied on the state agency "medical consultant opinions of Drs. Erickson and Whittle[.]" Id. Plaintiff contends those opinions were "degraded" by another consulting physician's opinion that claimant was qualified at step 3 as of June 1, 2008. Id.

Plaintiff submits the ALJ misunderstood the court's remand order by concluding the court held claimant was only disabled "as of June 1, 2008." Id. at p. 23 (referencing Docket 14 ¶ 34). Plaintiff argues the ALJ ignored the court's step two conclusion that claimant suffered from more than asthma and hypertension. Id. (referencing Docket 14 ¶ 34). "These misperceptions," according to plaintiff, "strain confidence that the ALJ made a good-faith effort to comply with the Order." Id.

8

The Commissioner argues the ALJ "properly assigned Dr. Calhoon's opinion little weight." (Docket 20 at p. 6). The Commissioner submits Dr. Calhoon's opinion "is inconsistent with the objective findings and [claimant's] own reports between August 2005 and June 2008." Id. The Commissioner asserts the ALJ correctly noted "that even while treating [claimant] in 2010, Dr. Calhoon did not diagnose him with scleroderma." Id.

The Commissioner contends "[p]laintiff's argument that the ALJ should have credited Dr. Calhoon's retrospective diagnosis because it was corroborated by lay evidence dating back to 2005 lacks merit." Id. at p. 7. The Commissioner argues "the ALJ specifically found Dr. Calhoon's opinion that [claimant] had listing-level scleroderma . . . was inconsistent with generally unremarkable treatment notes from August 2005 to June 2008, which indicated [claimant] was not complaining of shortness of breath or fatigue on a regular basis." Id.

The Commissioner says claimant's "brothers' reports do not undermine the ALJ's . . . decision to give Dr. Calhoon's opinion little weight." The Commissioner submits the brothers' statements close in time to the period under examination show that claimant was fully engaged in activities of daily living. For these reasons, the Commissioner believes claimant's "own statements and the third-party function reports do not support Dr. Calhoon's retrospective opinion." Id. at p. 10.

9

The Commissioner submits the ALJ "fully complied with the February 2016 remand order, which directed him to determine whether [claimant] was disabled prior to June 1, 2008." Id. at p. 12. Because the ALJ followed the court's remand instructions, the Commissioner argues '[p]laintiff has not shown any error." Id.

Dr. Calhoon submitted a medical source statement in which he opined that claimant's "interstitial lung disease, CREST variant of scleroderma, and pulmonary emboli had been present and prevented full-time work since 2005." (Docket 14 ¶ 11). In Dr. Stephen Calhoon's opinion, claimant's "heart and lungs were involved, with pulmonary fibrosis and restrictive lung disease. [Dr. Calhoon] opined that [claimant] had constitutional symptoms." Id. ¶ 115. Those constitutional symptoms, in Dr. Calhoon's opinion, were that claimant "lost weight from May 2005 to October 2005 and, based on the severity of his scleroderma at that time, he would have experienced additional constitutional symptoms including severe fatigue, and dyspnea[8] with any exertion, confirmed by his two brothers' reports. It is unlikely that he ever felt 'well,' thus 'malaise.' " Id. (some internal quotation marks omitted). "Dr. Calhoon explained that [claimant] could look okay at rest but be markedly dyspneic with exertion. We have clear evidence this man has scleroderma with very

---

[8]"Shortness of breath—known medically as dyspnea—is often described as an intense tightening in the chest, air hunger or a feeling of suffocation." https://www.mayoclinic.org/symptoms/shortness-of-breath/basics/definition/sym-20050890.

10

severe interstitial lung disease." Id. (some internal quotation marks and brackets omitted).

>Dr. Calhoun opined:
>
>Throughout [claimant's] course he was seen by a number of physicians who made misdiagnoses. This type of lung disease is relatively rare. . . . In reviewing [early records] I think it is clear that all of his symptoms are from the interstitial lung disease. . . . The use of the term "restrictive COPD" is clearly in error as there is no such diagnosis. His spirometry never showed obstructive physiology. He was given asthma medications, but that was primarily because there was nothing else to offer him. Asthma was never a valid diagnosis. . . . Most reviewers are more familiar with COPD and the criteria are better worked out for establishing a degree of limitation. This data does not translate to the restrictive diseases. The diffusion capacity is one of the better tests for assessing severity of these diseases and when his was first measured in 2008 it was severely reduced.

Id. Dr. Calhoun's final opinion was as follows:

>[W]e know in 2005 he had severe restriction on spirometry and the presence of fibrosis at that time. The amount of dypnea [sic] and fatigue that [he] was complaining about is very consistent with his disease and this data. This is a real disease with real limitations and I do not think that he was able to sustain work even 4 hours a day at a sedentary job during that period of time.

Id. ¶ 116 (internal quotation marks omitted).

In Grebenick v. Chater, 121 F.3d 1193 (8th Cir. 1997), the court looked at the absence of a contemporaneous record. "In a case involving a degenerative disease such as multiple sclerosis, where a claimant does not have contemporaneous objective medical evidence of the onset of the disease, the ALJ must consider all of the evidence on the record as a whole, including the lay evidence and the retrospective conclusions and diagnosis of her doctor."

11

Grebenick, 121 F.3d at 1199 (referencing Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984)).  See also Jones v. Chater, 65 F.3d 102, 104 (8th Cir. 1995) (The court concluded that the retrospective medical opinion needed to be evaluated in light of the testimony not only of the claimant, who the ALJ found to not be credible in Jones, but also in light of the corroborating witnesses who knew the claimant both before and after the alleged onset date.).

"If the [treating doctor's retrospective] diagnosis is based upon a medically accepted clinical diagnostic technique, then it must be considered in light of the entire record to determine whether it establishes the existence of a physical impairment prior to the expiration of the claimant's insured status." Grebenick, 121 F.3d at 1199 (citing Basinger, 725 F.2d 1169).  "A treating physician's opinion is generally entitled to substantial weight; however, such an opinion is not conclusive in determining disability status, and the opinion must be supported by medically acceptable clinical or diagnostic data."  Id. (citing Davis v. Shalala, 31 F.3d 753, 756 (8th Cir. 1994)).  In Grebenick, the court found "[b]ecause the doctor's conclusion is unsupported by his medical records, the ALJ was free to reject his retrospective diagnosis."  Id.

In the remand order in this case, the court noted:

It is evident from the medical records the physicians treating [claimant] felt he needed further evaluations and suspected an undiagnosed condition.  On September 14, 2005, the treating physician noted [claimant] needed a "specialty eval at some point either cardiology and or pulmonary and or rheumatologic." (AR 434).  An imaging report dated October 5, 2005, indicated "[i]nterstitial changes could be more acute and possibly represent

12

> some form of a hypersensitivity *pneumonitis* or *other* interstitial lung disease." (AR 442) (emphasis in original). Follow up examinations were requested. (AR 341). Further evaluations, however, were not conducted.

(Docket 14 ¶ 22).[9] The order further directed the case was "remanded . . . to allow the ALJ to review the record as a whole to determine the weight to be assigned to Dr. Calhoon's opinion regarding [claimant's] onset date of his disability." Id. ¶ 23.

The ALJ gave Dr. Calhoon's "opinion little weight prior to June 1, 2008 because Dr. Calhoon never treated the claimant until January 2010. . . . Even Dr. Calhoon himself was not diagnosing scleroderma in 2010 while he was treating the claimant and to later opine the claimant met [the step three] listing 14.04, regarding scleroderma, is clear speculation and conjecture." (AR at p. 573). The ALJ pointed out "on July 7, 2010, Dr. Todd Bull, University of Colorado Hospital, was unprepared to give a diagnosis of scleroderma[.]" Id. Earlier in the decision, the ALJ accurately summarized claimant's medical history and activities of daily living. Id. at pp. 571-72. The ALJ stated "[a]s noted above, objective treatment notes from 2005 to 2008, cited above, show the claimant was not complaining of shortness of breath or fatigue on a regular basis. Thus, Dr. Calhoon's speculative opinion is not consistent with the claimant's own reported abilities." Id.

---

[9]The court corrected the emphasis indicated and a minor typographical error to properly reflect the content of the order.

Claimant's physical condition during the critical time period is well documented. Claimant's health care providers made observations of his condition which were contrary to signs critical to Dr. Calhoon's diagnosis of scleroderma in 2005. See Docket 14 ¶¶ 47-48, 50, 52-55, 59-60, 65 & 71. While there were signs claimant's pulmonary disease was progressing, there is insufficient evidence to support Dr. Calhoon's diagnosis of scleroderma in 2005.

Contrary to plaintiff's argument, the ALJ gave little weight to the opinions of the state agency physicians, Drs. Whittle and Erickson. Id. at pp. 573-74. "The statement from Dr. Whittle, a State agency non-examining and non-treating source, is brief and merely indicates there was insufficient medical evidence to determine whether the claimant's condition met a listing prior to May 31, 2008. The statement is conclusory and offers little probative value[.]" Id. at p. 573. The ALJ similarly dismissed the opinion of Dr. Erickson. "This opinion is clearly inconsistent with the record as a whole and ignores the fact the claimant met listing level requirements for disability well before January 2009." Id. at p. 574.

The ALJ further explained why "little weight" was given to the third-party statement of claimant's former employer.

> This statement is vague and contains little factual information. Moreover, while the statement indicates the claimant was limited in his ability to perform very heavy work, consistent with this opinion, the statement does not indicate the claimant could not have

14

performed other work that was less physically demanding, such as that allowed within the residual functional capacity.

Id. at pp. 573-74.

The ALJ gave good reasons for not assigning controlling weight to Dr. Calhoon's opinions and for discounting his opinions. Dolph v. Barnhart, 308 F.3d 876, 878-79 (8th Cir. 2002). It is not the role of the court to re-weigh the evidence and it cannot reverse the Commissioner's decision if the decision is supported by good reason and is based on substantial evidence. Guilliams, 393 F.3d at 801.

The court finds the ALJ did not err in identifying claimant's severe impairments at step two. Because the remainder of plaintiff's arguments are premised on a designation of scleroderma as a severe impairment at step two, plaintiff's arguments addressing step three and step four are moot.

**STEP FIVE**

The "burden of production shifts to the Commissioner at step five." Stormo, 377 F.3d at 806. For the period prior to June 1, 2008, the ALJ concluded claimant could "perform all or substantially all of the requirements of . . . [light work subject to] additional limitations." (AR at p. 575). The ALJ specifically incorporated the testimony of the vocational expert at a previous hearing in which the witness found "representative occupations" of "ticket taker . . . 86,892,000 such jobs available in the national economy; . . . information clerk . . . 1.1 million such jobs available in the national economy;

15

and . . . cashier II . . . 86,940 such jobs available in the national economy."[10] Id. "Based on the responses of the vocational expert," the ALJ "conclude[d] that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." Id. The ALJ concluded "[a] finding of 'not disabled' from August 14, 2005 through June 1, 2008 is therefore appropriate under the framework of the [Medical-Vocational Guidelines, 20 CPR Part 404, Subpart P, Appendix 2]." Id.

Plaintiff does not challenge the use of the Medical-Vocational Guidelines but only the ALJ's acceptance of the vocational expert's testimony of the number of jobs in the national economy. (Docket 18 at pp. 24-26). Plaintiff argues the ALJ is using "an unpublished interpretation of the Social Security Act" to reach the conclusion there are jobs in the "national economy." Id. at p. 24. Plaintiff submits "[t]his is a due process issue." Id.

The Commissioner argues "the proper focus of inquiry is on the national economy, rather than the regional or local economy." (Docket 20 at p. 14) (referencing 42 U.S.C. § 423(d)(2)(A) (an individual is not disabled if he can

---

[10]The Commissioner suggests "the ALJ inadvertently switched the national numbers for Cashier II and information clerk in his decision." (Docket 20 at p. 14 n.6). The Commissioner argues "[t]his scrivener's error has no bearing on the outcome of the case." Id. (referencing Johnson v. Apfel, 240 F.3d 1145, 1149 (8th Cir. 2001)). The court adopts the logic of Johnson and finds the scrivener's error is insignificant to the resolution of the case.

engage in substantial gainful work existing in the national economy, "regardless of whether such work exist[s] in the immediate area in which he lives"); Whitehouse v. Sullivan, 949 F.2d 1005, 1007 (8th Cir. 1991) ("The expert is only required to state his opinion as to the number of jobs available in the national economy."); Haller v. Astrue, Civil No. 11-2175, 2012 WL 2888801, at *11 (W.D. Ark. July 16, 2012) (unpublished) (similar); Craig v. Chater, 943 F. Supp. 1184, 1191 (W.D. Mo. 1996) ("The Commissioner is only required to show that the jobs which plaintiff is capable of performing exist in significant numbers in the national economy, not the region where plaintiff lives." (citing Janka v. Sec'y of HEW, 589 F.2d 365, 370 (8th Cir. 1978); 20 CFR § 404.1566)). The Commissioner submits the ALJ met the "step-five burden by identifying 10,000 jobs in the national economy." (Docket 20 at p. 14) (referencing Johnson v. Chater, 108 F.3d 178, 180 (8th Cir. 1997)).

The Commissioner argues that even if the court requires a finding of "a significant number of regional jobs at step five, [p]laintiff still cannot show error." Id. at p. 15. The Commissioner points out the vocational expert testified "there were 2,361 ticket taker jobs in a 3-state region; 24,891 cashier II jobs in a 3-state region; and 2,283 information clerk jobs in a 3-state region." Id. (referencing AR at p. 1108).

Plaintiff's reply brief does not dispute the Commissioner's representation of the number of regional jobs identified by the vocational expert. (Docket

17

21 at pp. 10-11). Rather, plaintiff again makes a general assertion that the use of "national economy" numbers violates the Social Security Act. Id.

The court finds that remanding the case so the ALJ could make a specific finding on the number of jobs available on a regional basis would not change the outcome. For purposes of this case, plaintiff's argument is moot.

**ORDER**

Based on the above analysis, it is hereby

ORDERED that plaintiff's motion to reverse the decision of the Commissioner (Docket 17) is denied.

IT IS FURTHER ORDERED that defendant's motion to affirm the decision of the Commission (Docket 19) is granted.

Dated March 31, 2019.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE